**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 23-cr-20 (TNM)** |
| | : | |
| v. | : | **18 U.S.C. § 111(a)(1)** |
| | : | |
| **RYAN SWOOPE,** | : | |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Ryan Swoope, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt.

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd

encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Ryan Swoope's Participation in the January 6, 2021 Capitol Riot*

8. The defendant, Ryan Swoope, is a resident of Perry, Ohio. On January 5, 2021, the defendant, Saul Llamas, and Jordan Siemers, drove from Ohio to Washington, D.C. to attend the rally in support of former President Trump on January 6. After the rally, the three walked to the U.S. Capitol Building with a large crowd. Before reaching the Capitol Grounds, they stopped in an unknown building to use the facilities, at which point their bags were searched.

9. At 3:08 p.m., the defendant, Llamas, and Siemers entered the U.S. Capitol through the Senate Wing Door. Upon entry, the defendant saw the broken windows inside the door frame while an alarm sounded.

10. The defendant walked towards the Crypt and entered the Senate Spouses' Lobby. While in the lobby, the defendant chanted "Our House" in response to someone chanting "Whose House?" The defendant then left back out the Senate Wing Door at 3:17 p.m.

11. The defendant then continued towards the north side of the Capitol where he stopped and stayed with a group of rioters at the North Door. Sometime after the defendant's arrival to this area, several members of the United States Capitol Police ("USCP") and the Metropolitan Police Department retreated into the Capitol Building through the North Door. As the officers moved into the North Door vestibule, the defendant and several other rioters crowded around the doorway. Then, at 3:52 p.m., the defendant sprayed a cannister of chemical irritant into the vestibule and struck USCP Sergeant A.B. in the face.

12. In response to being struck by chemical irritant spray, Sergeant A.B. visibly winced in pain and coughed several times. Sergeant A.B. retreated further into the Capitol Building to seek aid. Once inside, other officers recognized the sergeant in distress and brought him to a restroom to provide aid. Over the course of several minutes, the other officers poured water over Sergeant A.B's face to remove the irritant. The pain caused by the irritant forced the sergeant to keep his eyes closed, blinding him for 20 minutes.

### *Elements of the Offense*

13. The parties agree that 18 U.S.C. § 111(a)(1) requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or inferred with Sergeant A.B., an officer from the United States Capitol Police;

   b. Second, the defendant did such acts forcibly;

   c. Third, the defendant did such acts voluntarily and intentionally;

   d. Fourth, Sergeant A.B. was an officer or employee of the United States who was then engaged in the performance of his official duties;

e. Fifth, the defendant made physical contact with Sergeant A.B. or acted with the intent to commit another felony. For the purposes of this element, "another felony" refers to the offense charged in Count 1 of the Superseding Indictment.

### *Defendant's Acknowledgments*

14. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he assaulted, resisted, opposed, impeded, intimidated, or inferred with certain officers, in violation of 18 U.S.C. § 111(a)(1). The defendant assaulted a federal officer, as defined by 18 U.S.C. § 1114(a), by spraying the officer with chemical irritant. The chemical irritant was a dangerous weapon. The defendant also admits that he acted with the intent to commit another felony – that is, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: _____
Andrew S. Haag
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Ryan Swoope, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9/1/2023

10/05/2023

Ryan Swoope
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

10/5/2023

Date: 9/1/2023

Edward Bryan
Attorney for Defendant